UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| **DAVID P. PAUL JD** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-646-RLB** |
| **JOHN V. WILLIAMS, M.D.** | **CONSENT CASE** |

## ORDER

Before the Court is Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (R. Doc. 7) filed on October 24, 2018. The motion is opposed. (R. Doc. 9). Defendant has filed a Reply. (R. Doc. 16).

Also before the Court is Plaintiff's Motion to Extend Time to File Plaintiff's Original Complaint Pursuant to Federal Rules of Civil Procedure Rule 6(b)(1)(B) (R. Doc. 25) filed on December 3, 2018. The motion is opposed. (R. Doc. 26).

Also before the Court is Plaintiff's Motion for Leave of Court to File Motion for Extension of Time Pursuant to Middle District of Louisiana Local Rule 7(a) (R. Doc. 27) filed on December 28, 2018.

Also before the Court is Plaintiff's Motion for Joinder of Claims Pursuant to Rule 18 of the Federal Rules of Civil Procedure (R. Doc. 28) filed on March 15, 2019. The motion is opposed. (R. Doc. 29).

**I.  Background**

David P. Paul ("Plaintiff") commenced this tort action against Dr. John V. Williams ("Defendant") on July 9, 2018. (R. Doc. 1). Plaintiff filed an Amended Complaint on September 20, 2018. (R. Doc. 3).

Plaintiff alleges that "[t]he date giving rise to the need for this lawsuit is July 6, 2017." (R. Doc. 3 at 3). Plaintiff asserts that he is seeking relief for intentional infliction of emotional distress ("IIED"), adding that "[a]lthough the circumstances giving rise to this lawsuit were caused by a medical procedure, this is not a medical malpractice claim." (R. Doc. 3 at 3). While the exact circumstances of the underlying medical procedures are unclear, it appears that Plaintiff sought and obtained elective plastic surgery from Defendant with respect to his eyelids and lips. (R. Doc. 3 at 7-9).[1] Among other things, Plaintiff alleges that at a post-surgery office visit, Defendant refused to acknowledge any deficiencies regarding the outcome of the surgery and called the police to confront Mr. Paul. (R. Doc. 3 at 6, 9). Plaintiff alleges that he became aware of the need for this lawsuit on July 6, 2017, "when the plaintiff who had been trying to contact the defendant to get him to help him have a corrective surgery that would go a long way into fixing the problem the defendant created learned from a conversation with the defendant's daughter and high-level employee in the defendant's practice, that all attempts to talk to the defendant will be in vain and that he has no intention of every talking to the plaintiff under any circumstances." (R. Doc. 3 at 3).

On November 14, 2018, Defendant filed its motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (R. Doc. 7). Defendant argues that Plaintiff's claims are prescribed, the IIED claim is a creative attempt to avoid the procedural requirements set forth by the Louisiana Medical Malpractice Act, La. R.S. 40:1231.1 *et seq.*, and Plaintiff's claims (including any alleged claim for defamation) otherwise fail to state a claim.

---

[1] Defendant asserts that the underlying surgeries were "performed during 2000 and 2001." (R. Doc. 7-1 at 1). In his opposition to Defendant's motion to dismiss, Mr. Paul asserts that he sought cheekbone implants and a chin implant from Defendant, and that Defendant suggested that he would also benefit from fascia grafts in his eyelids. (R. Doc. 9 at 5).

2

In opposition, Plaintiff acknowledges the date that gave rise to this lawsuit was July 6, 2017, and that he had until July 6, 2018 to file the instant action. (R. Doc. 9 at 1). Plaintiff submits documentation that he mailed his Complaint to the Clerk's Office on July 5, 2018 through the U.S. Postal Service ("U.S.P.S.") for next-day delivery, that the U.S.P.S. attempted delivery on July 8, 2018 at 11:52 a.m. but failed in light of "No Access to Delivery Location," and that the U.S.P.S. delivered the Complaint on July 9, 2018. (R. Doc. 9-1). Accordingly, Plaintiff asserts that this action was timely filed in light of Rule 6(a)(3)(A) of the Federal Rules of Civil Procedure, which extends the deadline for the filing of certain papers when the Clerk's Office is inaccessible. (R. Doc. 9 at 1-2).[2]

Plaintiff asserts that he has not alleged a claim for medical malpractice or defamation. (R. Doc. 9 at 2-3). Most of Plaintiff's opposition seeks to explain his IIED claim. (R. Doc. 9 at 3-10). Plaintiff provides a more detailed explanation of the telephone conversation on July 6, 2017 that he states gives rise to this lawsuit:

> The date that gives rise to this lawsuit is July 6, 2017. On that date, the plaintiff contacted the defendant's principle place of business and spoke with the defendant's daughter. The plaintiff had begun contacting the daughter earlier than that and sent her pictures via email of his face with the hopes she would see those pictures and persuade her father to help him achieve what to the plaintiff would be more pleasing facial features but that did not happen. The plaintiff found a doctor who is interested in helping the plaintiff finally achieve that handsome face and the surgery was to cost $2,600. That was a very, very good deal for all the things he was going to do. This time, the plaintiff informed the daughter of the defendant who has a high position in her father's practice,

---

[2] Plaintiff has also filed motions seeking to "extend" the deadline to file the complaint pursuant to Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure, which allows certain extensions of deadlines after their expiration if the failure was a result of excusable neglect, and pursuant to Local Rule 7(a), which allows for extensions of deadlines to file pleadings. (R. Docs. 25, 27). These motions are addressed below in further detail. Plaintiff also filed a motion brought pursuant to Rule 18. (R. Doc. 28). This motion appears to seek leave to add two additional claims that are variations of the same IIED claim raised in the Complaint and Amended Complaint. Nothing in the proposed additional claims would alter the Court's conclusions with respect to prescription and failure to state a claim discussed below.

that he had found a solution to what he had been complaining about all those years. The plaintiff informed the her that it would cost $2,600 and let it be known that he wants the defendant to pay for the surgery.

The defendant's daughter insisted that the doctor does not feel any other surgery is warranted. When asked about whether he saw the pictures the plaintiff had sent to the defendant's attorney, she said that he had seen them, and he was pleased with the results. The plaintiff asked whether she had seen the pictures because she was sent the same pictures that the defendant's attorney had been sent and she answered in the affirmative. When asked what she thought, she said they look nice. The plaintiff asked whether she had seen the pictures because she was sent the same pictures that the defendant's attorney had been sent and she answered in the affirmative. When asked what she thought, she said they look nice. The plaintiff was very disappointed to hear those lies and insisted she look at them again, and on that date, he sent her another set of pictures.

The plaintiff knows that they do not really feel that way and during the conversation with the defendant's daughter she did imply that he should go and seek mental counseling or therapy. The conversation did contain a heated exchange but did not get out of hand. Nevertheless, the conversation did still end with the defendant's daughter hanging up on the plaintiff. The plaintiff has never attempted to contact the defendant after that, unless you count service of the amended complaint.

(R. Doc. 9 at 6-7). Plaintiff also discusses his dealings with Defendant prior to the July 6, 2017 telephone call in support of a finding that he has stated a claim for IIED. (R. Doc. 9 at 7-10).

## II. Law and Analysis

### A. Legal Standards for Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In order to survive a Rule 12(b)(6) motion, a pleading's language, on its face, must demonstrate that there exists plausibility for entitlement to relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007). "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556

U.S. 662, 679 (2009). In determining whether it is plausible that a pleader is entitled to relief, a court does not assume the truth of conclusory statements, but rather looks for facts which support the elements of the pleader's claim. *Twombly*, 550 U.S. at 557. Factual assertions are presumed to be true, but "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" alone are not enough to withstand a 12(b)(6) motion. *Iqbal*, 556 U.S. at 678.

### B. Prescription

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (citing *Erie R. Co. v. Thompkins*, 304 U.S. 64, 78 (1938)); *Orleans Parish School Board v. Asbestos Corp. Ltd.*, 114 F.3d 66, 68 (5th Cir. 1997) (applying state law prescriptive period).

Plaintiff asserts, in both his pleadings and argument, that the telephone conversation on July 6, 2017 between Plaintiff and Defendant's daughter gives rise to this lawsuit. (R. Doc. 9 at 6). Plaintiff further acknowledges that until the filing of the instant lawsuit, he never again attempted to contact Defendant. (R. Doc. 9 at 7). As Plaintiff asserts that he is not alleging claims for medical malpractice or defamation, the Court will need only address his IIED claim.

Under Louisiana law, tort actions must be brought within one year of the day the injury or damage is sustained. La. Civ. Code art. 3492. The last day to bring an action with a one-year prescriptive period is "the day of the last year that corresponds with the date of the commencement of prescription." La. Civ. Code art. 3456.

Plaintiff specifically alleges that "[t]he date giving rise to the need for this lawsuit is July 6, 2017." (R. Doc. 3 at 3). There is no dispute that the prescriptive period commenced no later than on that date. Accordingly, the last day to bring the instant action was July 6, 2018. La. Civ. Code art. 3456; *see Elloie v. Anthony*, 660 So. 2d 897 (La. App. 4th Cir. 1995) (affirming

5

dismissal of tort action involving injury on March 1, 1992 where the personal injury lawsuit was filed on March 2, 1993). Furthermore, because July 6, 2018 was not a legal holiday, Louisiana substantive law does not provide any extension of the prescriptive period. *See* La. Civ. Code art. 3454 ("In computing a prescriptive period, the day that marks the commencement of prescription is not counted. Prescription accrues upon the expiration of the last day of the prescriptive period, and if that day is a legal holiday, prescription accrues upon the expiration of the next day that is not a legal holiday.").

There is no dispute that the instant action was filed on July 9, 2018. Plaintiff raises various arguments in support of a finding that despite having been filed three days after the running of prescription, the Complaint was timely filed. The Court finds Plaintiff's arguments unconvincing.

First, Plaintiff asserts (in opposing Defendant's motion to dismiss) that this action was timely filed on July 9, 2018 in light of Rule 6(a)(3)(A) of the Federal Rules of Civil Procedure. (R. Doc. 9 at 1-2). Rule 6 applies "in computing any time period specified in [The Federal Rules of Civil Procedure], in any local rule or court order, or in any statute that does not specify a method of computing time." Fed. R. Civ. P. 6(a). Rule 6(a)(3)(A) provides that "[u]nless the court others otherwise, if the clerk's office is inaccessible . . . on the last day for filing under Rule 6(a)(1), then the time for filing is extended to the first accessible day that is not a Saturday, Sunday, or legal holiday." Fed. R. Civ. P. 6(a)(3)(A). Some federal courts have suggested that Rule 6(a)(3) may lengthen a state-law limitation period in a diversity action. *See*, *e.g.*, *Provenza v. Stamps*, No. 09-191, 2010 WL 706480, at *2 (S.D. Miss. Feb. 22, 2010); *Daisley v. FedEx Ground Package Sys., Inc.*, No. 08-4063, 2008 WL 5083009, at *3 (E.D.N.Y. Dec. 1, 2008); *but see O'Malley v. Town of Egremont*, 453 F. Supp. 2d 240, 247 (D. Mass. 2006) ("[C]ourts have

been quite reluctant to use the civil procedure rules to extend legislatively-established statutes of limitations.").

It is unclear whether Rule 6(a)(3)(A) applies to Louisiana's one-year prescriptive period for tort actions. Louisiana substantive law provides a general statute for computation of prescriptive periods that only provides a safe harbor extension where the prescriptive period falls on a legal holiday, not for weekends or clerk's office inaccessibility. *See* La. Civ. Code art. 3454. Furthermore, Louisiana substantive law more specifically provides that, for one-year prescriptive periods, "prescription accrues upon the expiration of the day of the last year that corresponds with the date of the commencement of prescription." La. Civ. Code art. 3456. Because these substantive statutes provide the specific methods for computing the prescriptive period, it appears that Rule 6(a)(3)(A) cannot extend the prescriptive period.

But even if Rule 6(a)(3)(A) applies in these circumstances, it does not apply in the instant action. In short, the Clerk's Office was accessible on July 6, 2018. The Clerk's Office was not closed on that Friday. Indeed, Plaintiff specifically represents that he spoke with an employee of the Clerk's Office "[l]ater in the afternoon on July 6, 2018" and was informed that his Complaint had not yet arrived. (R. Doc. 25 at 2). The Clerk's Office was not otherwise deemed inaccessible based upon inclement weather or any other purpose. Accordingly, Rule 6(a)(3) does not apply because the Clerk's Office was open and accessible.[3]

Plaintiff also argues that the prescriptive period should be extended pursuant to Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure. (R. Doc. 25). Rule 6(b)(1)(B) provides that "[w]hen an act may or must be done within a specified time, the court may, for good cause,

---

[3] Even if the Clerk's Office was inaccessible, Rule 6(a)(3) provides the Court with the discretion to issue an order precluding the extension.

extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). In evaluating "excusable neglect," the Court considers "(1) the possibility of prejudice to the other parties, (2) the length of the applicant's delay and its impact on the proceeding, (3) the reason for the delay and whether it was within the control of the movant, and (4) whether the movant has acted in good faith." *Agee v. City of McKinney, Tex.*, 593 F. App'x 311, 314 (5th Cir. 2014) (citing *Salts v. Epps*, 676 F.3d 468, 474 (5th Cir. 2012)). "Proof of good cause requires at least as much as would be required to show excusable neglect, as to which simple inadvertence or mistake of counsel or ignorance of the rules usually does not suffice." *Thrasher v. City of Amarillo*, 709 F.3d 509, 511 (5th Cir. 2013) (citing *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1306 (5th Cir. 1985)).

For the same reasons as discussed with respect to Rule6(a)(3)(A), it is unclear whether Rule 6(b)(1)(B) would apply to extend the one-year prescriptive period under Louisiana law. *See O'Malley*, 453 F. Supp. 2d at 247-46 (citing authorities in support of a finding that Rule 6(b) does not apply to extend statutes of limitations, but further finding that the instant situation did not involve excusable neglect where action was filed after expiration of statute of limitations in light of alleged extreme weather conditions). Even if Rule 6(b)(1)(B) applies, the Court nevertheless concludes that the facts surrounding the untimely filing of this action do not amount to excusable neglect. Allowing an extension of the one-year prescriptive period would prejudice Defendant because he would have to defend an untimely lawsuit. Furthermore, Plaintiff waited until the very last day before prescription ran to mail his Complaint to the Clerk's Office. While Plaintiff did not have access to electronic filing, he could easily have engaged a lawyer who did

or otherwise hand-delivered the complaint to the Clerk's Office. Given the foregoing, the Court does not find good cause to extend the time to file this action based upon excusable neglect.[4]

Finally, Plaintiff argues that the prescriptive period should be extended pursuant to Local Rule 7(a). (R. Doc. 27). Local Rule 7(a) provides the following:

> **Extension of Time to Plead**. Upon certification by a moving party that there has been no previous extension of time to plead and that the opposing party has not filed in the record an objection to an extension of time, then on an ex parte motion and order, the Court will allow one extension for a period of twenty-one days from the time the pleading would otherwise be due. Further extensions will not be granted by stipulation, but only by motion to the Court and for good cause shown. This rule shall apply to pleadings listed in Fed. R. Civ. P. 7(a).

The foregoing local rule does not expressly limit itself to responsive pleadings. While a complaint is a pleading under Rule 7(a), the foregoing local rule is inapplicable to initial complaints because it would be impossible for an objection from an opposing party to be filed in the record before the actual filing of the lawsuit. *See* Fed. R. Civ. P. 3 ("A civil action is commenced by filing a complaint with the court."). At any rate, for the same reasons discussed above, the Court does not find good cause for granting an extension to plead under this Local Rule.

Because the Court finds no basis for extending the one-year prescriptive period, the Court concludes that Plaintiff's IIED claim is prescribed. Furthermore, to the extent Plaintiff is seeking to allege an IIED claim based upon events preceding the July 6, 2017 conversation between Plaintiff and Defendant's daughter, any such claim is prescribed as well. Indeed, Plaintiff has not argued for the application of the continuing tort doctrine under the facts of this case, and the allegations in the pleadings do not support the application of the continuing tort doctrine based

---

[4] Rule 6(b)(1)(B) also provides the Court with the discretion to deny the extension despite a finding of "good faith" and "excusable neglect."

upon continuous tortious conduct and resulting damages.[5] Accordingly, any IIED claim brought by Plaintiff based on facts raised in the pleadings is prescribed.

### C. Failure to State a Claim

The Court also concludes that even if Plaintiff's claims were not prescribed they would still be subject to dismissal for failure to state a claim.

There is no dispute that Louisiana substantive law governs Plaintiff's IIED claim.[6] In order to recover for IIED under Louisiana law, a plaintiff has the burden of proving:"(1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct." *White v. Monsanto Co.*, 585 So.2d 1205, 1209-10 (La. 1991); *Deus v. Allstate Insurance Co.,* 15 F.3d 506, 514 (5th Cir .1994). "The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *White*, 585 So.2d at 1209. " Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Id*. "Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind." *Id*. Liability arises only where the mental suffering or anguish is extreme, and the distress suffered must be such that no reasonable person could be expected to endure it. *Id*. at 1210.

---

[5] This is not an employment-related action involving an alleged hostile/abusive work environment in which the continuing tort doctrine may apply to a claim for IIED. *See Bustamento v. Tucker*, 607 So.2d 532, 538-39 (La.1992).
[6] The Court takes judicial notice that Defendant's offices are located in the State of Louisiana.

Plaintiff has failed to set forth facts supporting the alleged IIED claim. Foremost, the July 6, 2017 conversation between Plaintiff and Defendant's daughter, which Plaintiff asserts gave rise to this lawsuit, did not even involve Defendant. Neither the pleadings nor Plaintiff's description in argument of the telephone call in his briefing support a finding that Defendant's conduct (or his daughter's conduct, for that matter) was extreme and outrageous, that Plaintiff suffered any severe emotional distress as a result of the conversation, or that Defendant intended to cause any emotional distress.

The additional allegations directly involving Defendant also do not set forth facts supporting an IIED claim. Again, neither the pleadings nor Plaintiff's descriptions in argument support a finding that any of Defendant's conduct after the surgeries until July 6, 2017 was "extreme" or "outrageous." At most, Plaintiff alleges that he was unsatisfied with the outcome of his elective cosmetic surgeries, that he attempted to contact Defendant to discuss potential corrective surgery, that Defendant has been aware that Plaintiff is deeply unsatisfied with the outcome of the surgeries, that Defendant showed Plaintiff computer enhanced photographs of the results of the surgeries, that Defendant has hired security and an attorney, that Defendant called the police on Plaintiff when he attempted to confront Defendant at his office about the surgeries, and that Defendant has failed to remove the fascia grafts. These allegations do not support a finding that Defendants' conduct was extreme or outrageous. Furthermore, Plaintiff has not pled that Defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct.

### III. Conclusion

Based on the foregoing,

**IT IS ORDERED** that Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (R. Doc. 7) is **GRANTED**, and Plaintiff's claims against the defendant John V. Williams, M.D. are **DISMISSED WITH PREJUDICE.**

**IT IS ORDERED** that Plaintiff's Motion to Extend Time to File Plaintiff's Original Complaint Pursuant to Federal Rules of Civil Procedure Rule 6(b)(1)(B) (R. Doc. 25) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave of Court to File Motion for Extension of Time Pursuant to Middle District of Louisiana Local Rule 7(A) (R. Doc. 27) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Joinder of Claims Pursuant to Rule 18 of the Federal Rules of Civil Procedure (R. Doc. 28) is **DENIED** as moot.

Signed in Baton Rouge, Louisiana, on April 9, 2019.

**RICHARD L. BOURGEOIS, JR.**
**UNITED STATES MAGISTRATE JUDGE**